### DAVID SMITH *vs.* MOSES SWEET.

The will of a married woman, under the statute of 1842, c. 74, is not valid, unless the assent of her husband be given thereto, in writing, and indorsed thereon, during her lifetime.

THE facts in this case, which was an appeal from a decree of the judge of probate, are sufficiently stated in the opinion of the court.

*H. Hubbard & P. S. Paige*, for the appellant.

*T. A. Gold*, for the appellee.

FORBES, J. This is an appeal from the decree of the judge of probate, approving and allowing a certain writing, as the last will and testament of Martha Sweet. The case has been submitted to this court upon an agreed statement of facts. The writing purports to be the will of Mrs. Sweet. It was executed by her in the presence of three witnesses, when she was of sound mind, and, upon the face of it, appears to be, in all respects, a valid will. It is agreed that, at the time this writing was made, Mrs. Sweet was the wife of Moses Sweet, who is named therein as sole devisee, and that his assent was not indorsed thereon during the lifetime of his wife; but that such an indorsement was made by him, before the writing was presented for probate. It does not distinctly appear, from the statement of facts, that the testatrix left any choses in action, which had not been reduced to possession by her husband. It is stated that she inherited some personal property from her father; but whether that property was taken possession of by the husband and appropriated to his own use during her lifetime, is not stated. We understand, however, from the course of the argument at the bar, that there is

nothing but real estate, of which the husband was seized in right of his wife, during her lifetime, upon which the will can operate ; and the only question made, is, whether the will was properly executed pursuant to the *St.* 1842, *c.* 74. That statute provides, that "any married woman, of the age of twenty-one years and of sound mind, may devise and dispose of, by her last will and testament, legally executed, any property, whether real, personal, or mixed, held in her own right and separate from that of her husband ; *provided*, that the rights and interests of the husband, to and in any such property, shall in no way be affected thereby ; nor shall such will be valid, unless such husband, if of sound mind and competent to act, shall give his assent thereto, expressed in writing, and indorsed thereon ; and *provided*, *also*, that any such will may be revoked by such married woman, at her will and pleasure, and without the consent of her husband."

Several objections, growing out of his construction of this statute, were made by the senior counsel for the appellant, one of which only the court have found it necessary to consider ; and that relates to the time at which the indorsement was made. Upon this point, it was urged, that the use of the word "husband" in the statute shows an intention, on the part of the legislature, that the written assent should be indorsed during the coverture. The argument is this : that, upon the death of Mrs. Sweet, Moses Sweet ceased to be her husband ; and, consequently, after that event, no indorsement could be made by the *husband*, as required by the act. To sustain this construction, Co. Lit. 29 *b.* was cited. It is probable that arguments of this description would have been listened to with more respect, two centuries ago, than at the present day, when the object is rather to ascertain the real meaning of a statute, than to indulge in nice criticisms upon the force of particular words or phrases. Still, the use of the word may have some tendency to explain the meaning of the act. If, indeed, the meaning were otherwise apparent, and the object, which the legislature had in view, required it, this term might be considered merely as

a *designatio personæ.* But the meaning being doubtful, the weight of the inference must depend upon the precision and accuracy with which language was used in drawing the act; neither of which, in the present instance, is very remarkable.

It is, however, clear that the indorsement of the assent of the husband is a condition precedent; it is made so by the statute; and, without it, the will of a married woman has no validity: it is simply void. It is true, that a will made during coverture, and republished after the death of the husband, may be good; but in such case it operates as a new will made at the time of the republication. It follows, then, that at the death of Mrs. Sweet, the estate descended to her heirs, in the same manner that it would have done, had no will ever been written. For we are of opinion, that the assent of the husband, after the death of the wife, cannot retroact upon the will in such manner as to render it valid. A will, under this statute, is the joint act of the husband and wife, and must be performed during their joint lives. Were it otherwise, these consequences would seem to follow: viz., there is no will, in contemplation of law, until the assent of the husband is indorsed: of course, there are no means provided by law to compel the production of the writing, for probate. In the mean time, the estate descends to her heirs, at the death of the wife, and passes, perhaps, from them into the hands of strangers, without notice. The estate is, apparently, indefeasible at the time of the descent and conveyance, and yet it is tainted with a secret vice, which may destroy it; for the husband, at any time within twenty years, may assent to the will, prove it, and defeat the estate. We cannot adopt a construction of the statute, from which these consequences might follow, in the absence of any explicit declaration of such intention, by the legislature.

Some aid in the construction of the statute may, we think, be derived from the last proviso. That proviso gives to the wife the power of revocation at her pleasure, and without the consent of the husband. But this power is limited to " any uch will; " that is, to a will made according to the act, and

upon which the assent of the husband has been indorsed. In the present case, the will was executed by the wife, and then placed in the custody of the husband. It was in his power, if so disposed, to retain the possession against the wife, and thus to prevent her from obliterating or destroying the writing. A deed or separate act of revocation would not defeat the instrument; because, not having been executed according to the statute, it was not a will which the statute empowered the wife to revoke. And yet there can be no doubt that the legislature intended to give to the wife, under all circumstances, and at every period during her life, full and unlimited control over any valid will or testamentary paper which she might make during coverture.

Whether this statute empowers a married woman to devise property to her husband at all, is a question upon which we express no opinion.

*Decree of the judge of probate reversed.*